Argued April 2; affirmed May 19, 1931

# AMERICAN TRUST CO. ET AL. *v.* McCALLISTER

(299 P. 319)

*Willis S. Moore,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*John M. Pipes,* of Portland (Martin L. Pipes, of Portland, on the brief), for respondents.

BEAN, C. J. Under the provisions of section 22-1202, Oregon Code 1930, codifying chapter 207, General Laws of Oregon, 1925, as amended by chapter 380,

General Laws of Oregon, 1929, section 27, before any trust company shall transact any business within this state it shall deposit with the superintendent of banks, as security and as a pledge for the faithful performance of its duties as a trust company, the sum of $50,000 in cash or securities, and that trust companies having a capital stock of less than $100,000 shall be required to deposit one-half the amount of such capital. Section 22-1213 defines "trust business" and prescribes the powers of a trust company in addition to the powers conferred by the general corporation laws.

In 1913 the legislature adopted chapter 341, entitled:

"An act to protect purchasers of stocks and bonds and prevent fraud in the sale thereof; to create a corporation department to administer this and other laws relating to the regulation and supervision of corporations, and providing penalties for the violation hereof."

Section 25-1303, Oregon Code 1930, provides that no permit shall be issued by the corporation commissioner authorizing the sale of any security or securities in the state of Oregon until there shall have been paid to the corporation commissioner, with the application for a permit, a graduated filing fee based on the value of the securities, but not less than $10; provided, however, that the provisions of this section shall not apply to "national and state bank and trust company stock * * *." A similar exemption is contained in subsequent amendments of the Blue Sky Law of 1913.

The principal question involved is whether a corporation, organized under the general corporation laws of the state of Oregon in 1901, which filed supplemental articles of incorporation changing its name on

August 20, 1927, having as a part of its corporate or charter powers the right to receive money on deposit or in trust with or without paying interest on the same, and to issue certificates of deposit for the same, and also having the right to take or hold any property, real or personal, in trust, and execute such trust, to act as executor, administrator, agent, trustee, assignee, factor, broker or receiver, is a trust company within the meaning of that provision of the Blue Sky Law relating to the sale of stock of the corporation, which provides that the stock of trust companies shall be exempt from the provisions of that law; or, otherwise stated, when the legislature exempted securities or "national and state bank and trust company stock", what kind of trust companies were embraced within the provisions of the exemption?

A law was first enacted which provided for the incorporation and regulation of trust companies in 1913. In 1914 a suit was instituted by the Pacific Title & Trust Company against Sargent, Superintendent of Banks of the State of Oregon (73 Or. 485, 492, 144 P. 452), wherein the plaintiff Pacific Title & Trust Company, which was incorporated January 14, 1901, filed supplemental articles of incorporation June 30, 1906; the court, in considering the question of whether such corporations come within the terminology of section 2 of chapter 354, General Laws of Oregon, 1913, providing "for the incorporation and organization, regulation, liquidation and supervision of trust companies and the regulation of banks authorized to do the business of a trust company", held

"There are two classes of corporations which are to be known as trust companies: One is a bank incorporated under the laws of the state providing for 'the incorporation and organization of banks,' which is authorized

by its charter to act in certain fiduciary capacities named in the act; and the other is a corporation organized under section 1 of the act in question. Such corporations alone are subject to the provisions of the act under the principle of the mention of one being the exclusion of the other. In other words, the act concerns only those corporations defined by its own terms."

It was held that the plaintiff was not required to abandon the word "trust" contained in the name of the corporation.

It would seem that "trust company stock," embraced in the statute, was intended, by the framers and makers of the law, to refer to stock of those trust companies defined by the statute and not to a corporation organized prior to the passage of that law under the general incorporation laws, although such corporation was authorized to perform certain trust duties. There are in the statute then three kinds of corporations: General corporations, some of which are empowered to transact a trust business; banks, authorized to do the business of a trust company; and trust companies, which are required to qualify by the deposit of securities, as above indicated. The reason for exempting trust company stock from the necessity of coming within the provision requiring a permit is that such a trust company is qualified under the statute by depositing a large amount of securities to guarantee the faithful performance of their duties. Other corporations are not subject to such requirement, but in order to sell securities or stock they are required to obtain a permit from the corporation commissioner. The requirement is plain and the reason thereof clear when the different statutes are taken into consideration.

■■ In determining the meaning of a statute, the particular object intended or the mischief which it was designed to remedy and the history of the period and of the act itself may be considered, and the statutory meaning of the word or phrase must be gathered from the purpose for which the statute was enacted: *Northern Counties Trust v. Sears*, 30 Or. 388, 395 (41 P. 931, 35 L. R. A. 188); *Wiley v. Solvay Process Co.*, 215 N. Y. 584, 588 (109 N. E. 606, Ann. Cas. 1917A, 314, 316); *State v. Huxford*, 35 R. I. 387, 393 (87 Atl. 171, Ann. Cas. 1915C, 1135, 1138); *State v. Bass Pub. Co.*, 104 Me. 288 (71 Atl. 894, 895, 20 L. R. A. (N. S.) 495); *Superior Oil Syndicate v. Handley*, 99 Or. 146, 157 (195 P. 159). The question determined in the latter case referred to a foreign trust company or a common law trust selling certificates of shares, and we do not find the opinion in that case of much assistance in the present inquiry.

■ The act of 1913 defined a "trust company," and this court held in *Pacific Title & Trust Co. v. Sargent*, supra, that the legislative definition did not apply to plaintiff under the definition of a "trust company" in that case. The American Trust Company is not a trust company within the meaning of the statute, § 25-1302, Oregon Code 1930; that is, the American Trust Company is not subject to the requirements of the statute relating to "trust companies" and its stock is not embraced in, or entitled to the exemptions accorded to bank and trust company stock. The amendments of the trust law subsequent to the rendition of the opinion in *Pacific Title & Trust Co. v. Sargent*, supra, we think, referred to "trust company" as defined by the statute and by the opinion in the case referred to.

The Blue Sky Law, which is involved in this case, provides that no corporation shall be permitted to sell

its corporate stock as a "dealer", as defined in the act, without complying with the provisions of the law, except state and national banks and trust companies. The American Trust Company, a corporation, having power under its charter or articles of incorporation to engage in a trust business, is not a trust company within the meaning of section 25-1301, Oregon Code 1930, and we find no provision of the statute exempting the stock of the American Trust Company from the provisions of the statute requiring a permit for the sale thereof. The Blue Sky Law does not exempt from its terms sales of the stock of a general corporation having power to do a trust business. The Blue Sky Law of 1913 and the amendments thereof constitute a reasonable regulation of the sale of stock and bonds for the protection of the public. The right to make such regulations under the police power has never been and cannot be surrendered by the state: 12 C. J. 912, § 423; *Butchers' Union, Etc., Co. v. Crescent City, Etc., Co.,* 111 U. S. 746 (4 S. Ct. 652, 28 L. Ed. 585, 587); *Barbier v. Connolly,* 113 U. S. 27 (5 S. Ct. 357, 28 L. Ed. 923, 929); *Eagle Ins. Co. v. Ohio,* 153 U. S. 446 (14 S. Ct. 868, 38 L. Ed. 778); *Chicago, B. & Q. R. Co. v. Nebraska, ex rel. City of Omaha,* 170 U. S. 57, 72 (18 S. Ct. 513, 42 L. Ed. 948, 953). It is said in *Butchers' Union, Etc., Co. v. Crescent City, Etc., Co.* supra, quoting from *Beer Co. v. Massachusetts,* 97 U. S. 25:

" 'Whatever difference of opinion' said the court, 'may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health and property of the citizens, and to the preserva-vation of good order and public morals. The legislature cannot by any contract divest itself of the power to provide for these objects. They belong emphatically

to that class of objects which demand the application of the maxim, *Salus populi suprema lex,* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself.' ''

The police power is an attribute of sovereignty which exists without any reservation in the constitution, being founded on the duty of the state to protect its citizens and provide for the safety and good order of society. It corresponds to the right of self-preservation in the individual, and is an essential element in all orderly governments, being necessary to the proper maintenance thereof and the general welfare of the community: 12 C. J. 907, § 415.

In *Eagle Insurance Co. v. Ohio,* supra, at page 453, the question was presented whether or not the charter of the plaintiff company exempted it from obligation to comply with the subsequently established police regulations of the state requiring insurance companies to make annual statements of their condition. The court quoted the following excerpts from the opinion in *Chicago L. Ins. Co. v. Needles,* 113 U. S. 574 (5 S. Ct. 681, 28 L. Ed. 1084):

''\* \* \* The right of the plaintiff in error to exist as a corporation, and its authority, in that capacity, to conduct the particular business for which it was created, were granted, subject to the condition that the privileges and franchises conferred upon it should not be abused, or so employed as to defeat the ends for which it was established, and that, when so abused or misemployed, they might be withdrawn or reclaimed by the state in such way and by such modes of procedure as were consistent with law. \* \* \*

''\* \* \* It would be extraordinary if the legislative department of a government, charged with the duty of enacting such laws as may promote the health,

the morals, and the prosperity of the people, might not, when unrestrained by constitutional limitations upon its authority, provide, by reasonable regulations, against the misuse of special corporate privileges which it has granted, and which could not, except by its sanction, express or implied, have been exercised at all.''

■ The legislature, under the police power, can regulate the sale of corporate stock. Such regulation is not in conflict with any provision of the federal constitution: *Pacific Title & Trust Co. v. Sargent,* supra; *Caldwell v. Sioux Falls Stock Yards Co.,* 242 U. S. 559 (37 S. Ct. 224, 61 L. Ed. 493); *Hall v. Geiger-Jones Co.,* 242 U. S. 539 (37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643); *Merrick v. N. W. Halsey & Co.,* 242 U. S. 568 (37 S. Ct. 227, 61 L. Ed. 498).

At the same time the legislature enacted chapter 341, General Laws of Oregon, 1913, creating a corporation department, it enacted chapter 354, General Laws of Oregon, 1913, the title of which is as follows:

''An act to provide for the incorporation and organization, regulation, liquidation and supervision of trust companies and the regulation of banks authorized to do the business of a trust company.''

As re-enacted, now contained in section 22-101, et seq., Oregon Code 1930, section 22-106 defines a ''trust company'' as follows:

''The term 'trust company,' when used in this act, means a corporation which is incorporated under the laws of this state for the purpose of conducting a trust or banking business or acting as executor, administrator, guardian of estates, assignee, receiver, depositary or trustee, under appointment of any court or by authority of any law of this state, or as trustee for any purpose permitted by law, or to the trust department of any bank or trust company.''

■ ¯Both acts of 1913 were filed in the office of the secretary of state and took effect on the same day. The different acts relating to the same subject should be construed in *pari materia*. When taken together they show legislative provisions for the organization and regulation of banks and trust companies and general corporations including those having power to do a trust business.

■■ To hold that the American Trust Company does not come within the regulations of either of the acts re-ferred to is to do violence to the intent of the legisla-tive enactments and to obliterate a large part of the Blue Sky Law. We therefore hold that the plaintiff, American Trust Company, is not a trust company within the meaning of section 25-1302, Oregon Code 1930, and is not exempted from the operation of the Blue Sky Law.

The decree of the circuit court is reversed.

BROWN, BELT and CAMPBELL, JJ., concur.